**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:20-cr-00006 |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON DEFENDANT'S MOTION TO** |
| SHAUN MICHAEL FARRINGTON, | ) | **SUPPRESS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………………....2

II.   FINDINGS OF FACT…………………….…………………………………….…2

      A.  TESTIMONY OF DEPUTY JESSE BELL………………………………………..3

      B.  TESTIMONY OF SERGEANT DAVID WALL……………………………………6

III.  ANALYSIS...……………....……………………………………………….…8

      A.  THE TRAFFIC STOP...…………………………………..……………………...8

      B.  SEIZURE OF THE LOCKED CONTAINERS…………….…………………….....12

IV.   RECOMMENDATION AND ORDER……………………………………….…………..16

## I. INTRODUCTION

This matter comes before the Court pursuant to Defendant's Motions to Suppress Traffic Stop and Subsequent Evidence and Request for Hearing (Dkts. 81 and 86) and brief in support (Dkt. 86-1), filed October 5, 2020 and October 9, 2020, respectively. The government resisted the motion on October 23, 2020. Dkt. 89. Defendant filed a reply brief in support of his motion on November 5, 2020. Dkt. 95. The matter was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for report and recommendation by Chief Judge John A. Jarvey. Dkt. 87.  Trial is set for February 1, 2021. Dkt. 107.

An evidentiary hearing was held on November 9, 2020. Dkt. 98. The government appeared by Assistant U.S. Attorney Caleb J. Copley. Defendant appeared personally and with his attorneys, Elizabeth Araguas and Charles Paul. Testimony was received from Henry County Deputy Jesse Bell and Henry County Sergeant David Wall. *Id.* The Court received two exhibits offered by the government without objection: Exhibit 1 – Driver's License Photo of Defendant and Exhibit 2 – Booking Photo of Defendant. *Id.* The parties were allowed to file post-hearing briefs. *Id.* The government submitted a supplemental response (Dkt. 102) on November 9, 2020 and Defendant filed a final reply (Dkt. 105) on November 12, 2020.

The Court considers the matter to be fully submitted. This Magistrate Judge has carefully considered the record evidence, including the exhibits admitted, the briefs filed by both parties, the arguments and statements of counsel and submits the following report. As set forth below, based on the facts presented and applicable law, it is recommended that the motion be denied.

## II. FINDINGS OF FACT

A criminal complaint was filed on December 16, 2019, against Defendant and Stefani Goodwin, alleging possession with the intent to distribute at least fifty grams of methamphetamine

in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Dkt. 3. Subsequently, Defendant was indicted on January 15, 2020, along with Goodwin, in Count 1 of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 and in Count 2 of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  Dkt. 33.

### A.    Testimony of Deputy Jesse Bell

Deputy Jesse Bell of the Henry County Sheriff's Office testified. Deputy Bell is the investigator for Henry County Deputy's Office, responsible for investigation of general crimes and narcotics. He has been a deputy with Henry County since June 2013 and investigator since May 2017. He has received surveillance training, a narcotic officer two-week training course and informant management training. He has been a member of the Southeast Iowa Narcotics Task Force since July 2019. Previously, he served with the Mt. Pleasant Police Department beginning in July 2010.

As a part of his duties, on March 31, 2019, Deputy Bell became aware of a suspected drug trafficking house in New London, Iowa, as well as a 2010 Ford Fusion registered to an Emily Richardson. In June 2019, during an interview with law enforcement, Richardson admitted to living at this house. Shortly thereafter, in July 2019 as part of a separate methamphetamine investigation, Deputy Bell applied for and received Facebook records which showed Richardson was trafficking narcotics with other individuals. On August 28, 2019, Deputy Bell obtained a state warrant authorizing installation of a GPS tracker for the 2010 Ford Fusion. The tracker was installed on the vehicle the next day and information received from it showed the vehicle being in Burlington, Washington and Henry County, Iowa. At that time, Deputy Bell knew Burlington to be a major source of methamphetamine.

3

In early September, Deputy Bell became aware of the Defendant and Goodwin being involved in methamphetamine sales. This information came to Deputy Bell from Facebook messages he received from another individual. Within those messages, Defendant discusses with this individual delivery of drugs to Defendant and drug quantities. These messages also implicated Goodwin. On September 30, 2019, Richardson's vehicle was seen at the Super 8 Motel in Burlington, Iowa, which is known to Deputy Bell as a drug trafficking location. Surveillance was conducted on the vehicle and Deputy Bell observed a male and female approach it. He did not know who the individuals were but knew they were not Richardson or her boyfriend. Using the GPS tracker, Deputy Bell was able to determine the 2010 Ford Fusion left the motel at 6:15 p.m. on September 30, returning to Burlington on October 1 at 12:45 p.m. The tracking shows the vehicle made multiple stops for short periods of time, indicating to him based on his experience in drug investigations, likely delivery of narcotics.

On October 1, 2019, the 2010 Ford Fusion was picked up on visual surveillance by other law enforcement and followed to a Dick's Sporting Goods store in Burlington. When Deputy Bell arrived, the vehicle was parked at the store. Deputy Bell observed the same male and same female he had seen at the motel on September 30, return to the vehicle. Deputy Bell testified that, after he had seen these people at the motel on September 30, he undertook further investigation to identify them. The GPS tracker showed the vehicle made a stop at a residence in Iowa City. Deputy Bell checked with Johnson County drug force task members and learned the vehicle was at or near Defendant's residence. With this information, Deputy Bell reviewed Defendant's driver's license and determined Defendant was the male he saw on September 30 with the vehicle at the motel and on October 1 with the vehicle at the store. A copy of Defendant's driver's license photo was admitted as government's Exhibit 1. From this information, he confirmed Defendant's address on

4

his driver's license matched the residence he had noted the vehicle stopping near in Iowa City. Deputy Bell also determined Defendant's driver's license was suspended. Deputy Bell further testified he was able to identify the female as Goodwin.

Deputy Bell followed the vehicle from the store back to the motel. He saw Defendant and Goodwin go into the motel, carrying a backpack, numerous other bags and a blue plastic tote. The GPS tracker showed the vehicle left Burlington at 6:00 p.m. that evening, returning at 2:42 p.m. the next day, October 2. During that time, the vehicle again made multiple short stops. The vehicle stayed at the motel on October 2 until about 6:10 p.m. Deputy Bell picked up visual surveillance of the vehicle again and saw the vehicle leave the motel. He identified Defendant as driving the vehicle from the motel. Deputy Bell estimated he was 200-300 feet from Defendant, watching through binoculars from a parking lot with an unobstructed view. He saw Defendant and Goodwin placing several bags into the back-seat trunk area of the vehicle before leaving the motel. Deputy Bell followed the vehicle as it left the motel, westbound on Highway 34 towards Mt. Pleasant. At that time, he contacted Sergeant Wall to advise him Defendant was driving the vehicle with a suspended license and requested he make a traffic stop, as Sergeant Wall was in uniform in a marked squad car while Deputy Bell was not.

Deputy Bell testified he was not present for the traffic stop performed by Sergeant Wall. However, he was aware the vehicle was towed to the Henry County Sherriff's Office, along with locked containers seized from the vehicle. Those containers were placed in the evidence shed at the Sherriff's Office. A drug dog sniffed each of the locked containers and alerted to them. Subsequent to this, Deputy Bell applied for a state search warrant to open the locked containers. Based on dispatch records, Deputy Bell believes the traffic stop occurred at approximately 6:46 p.m. and he would have sought the search warrant between that time and 10:00 p.m. After the

5

traffic stop, Defendant was placed under arrest for driving on a suspended license and booked into the Henry County Jail. He remained in custody through his indictment in this case.

A copy of Defendant's arrest booking photo from that evening was admitted as government's Exhibit 2. Deputy Bell testified Defendant's driver's license photo, Exhibit 1 and Defendant's arrest booking photo, Exhibit 2, except for some facial hair that is a little more prevalent, look similar to him. Further, by looking at these photos, he can identify Defendant.

**B.      Testimony of Sergeant David Wall**

Sergeant David Wall of the Henry County Sherriff's Department testified. He is a K-9 handler for the department and has been with the department since 2017. Previously he was a police officer with the city of Fairfield. Sergeant Wall testified when he is on duty, he typically wears his uniform, drives a marked squad car and is with his K-9, Uno, and this was the case on October 2, 2019. That evening, Deputy Bell asked him to make a traffic stop on the vehicle because the driver, Defendant, was operating with a suspended driver's license. Deputy Bell gave him Defendant's name. Sergeant Wall testified he became aware of Deputy Bell's investigation a week or two before the traffic stop and was aware it involved a suspected methamphetamine trafficking situation.

Sergeant Wall looked up Defendant's driver's license photo and identified Exhibit 1 as the same photo he viewed that day. Prior to making the stop, Sergeant Wall pulled up parallel to Defendant on the four-lane highway they were on to confirm Defendant was, in fact, the driver of the vehicle. He looked over at Defendant, who turned his head and looked directly at Sergeant Wall. Nothing obstructed his view of Defendant, nor did the vehicle have tinted windows. Sergeant Wall indicated Defendant had on a baseball cap, but this did not obstruct his view, either. Sergeant Wall then initiated a traffic stop of the vehicle.

At the stop, Sergeant Wall identified Defendant as the driver and Stephanie Goodwin as the front seat passenger. No one else was in the car. Sergeant Wall confirmed Defendant did not have a valid driver's license and made the decision to run Uno around the vehicle as he was aware of Deputy Bell's investigation on the car. In addition, prior to the K-9 open air sniff, Sergeant Wall took note of multiple cellphones in the car, a torch lighter in the center console cup holder area and a camera mounted to the rear-view mirror. Based on his experience investigating drug cases, Sergeant Wall testified a torch style lighter is used to make methamphetamine and individuals involved in drug trafficking often have multiple cell phones. He further indicated these items are odd for people to have in their vehicles.

Sergeant Wall testified Uno is certified to find the odor of methamphetamine, heroin, ecstasy, cocaine and marijuana. He and Uno were certified in 2013 through Mid-Michigan Kennels. Sergeant Wall and Uno undertake an annual certification from an independent organization and were certified on the date of this stop. When Uno alerts to a vehicle, he makes his final indication by sitting - what is called a passive alert. Sergeant Wall testified he and Uno have performed hundreds of open-air sniffs around vehicles.

Sergeant Wall estimated he initiated the open-air sniff about a minute to minute and a half after the initial encounter with Defendant. Uno gave a passive alert, by sitting at the driver's side rear door near a folded down back seat. Sergeant Wall told Defendant the vehicle would be searched. According to Sergeant Wall, Defendant became a little bit more agitated and blurted out the vehicle did not belong to him. An unused methamphetamine pipe was found in Goodwin's purse. In the trunk of the vehicle, Sergeant Wall found a large red scale, multiple individual baggies and locked containers within brief-case style bags. The locked containers were approximately six by six to six by twelve inches big. Each was secured by a lock with a code, similar to a bicycle

lock. Both Defendant and Goodwin denied knowledge or possession of the locked containers. Sergeant Wall testified, if he had the means to at the time, he would have opened and searched the containers immediately.

Sergeant Wall contacted Deputy Bell to brief him on the traffic stop. From this the decision was made to remove the containers from the vehicle, bring them to the Sheriff's Office and have an open-air dog sniff performed on them. Sergeant Wall did this with Uno, who alerted to all four containers. He testified it is not uncommon for him to remove items from a vehicle and have Uno do an open-air sniff around those items. A state search warrant was then obtained for the containers. A search of the containers revealed a significant amount of methamphetamine.

## III.  ANALYSIS

Defendant seeks to suppress all physical evidence obtained as a result of the traffic stop on October 2, 2019 and all evidence obtained by search warrants obtained subsequent to the stop based upon evidence recovered during the stop. Dkts. 81, 86, 95 and 105. Defendant contends the traffic stop was not justified because it was not supported by specific, articulable facts. Dkt. 86-1, p. 4. In addition, Defendant argues law enforcement was not justified in the seizure of the locked containers from the vehicle driven by Defendant. *Id*, pp. 7-8.

The government resists the motion in each particular. Dkts. 89, 102. The Court addresses each of Defendant's arguments in turn.

### A.  The Traffic Stop.

The Fourth Amendment protects against "unreasonable searches and seizures," and a traffic stop constitutes a seizure of the vehicle's occupants. U.S. Const. amend. IV, *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir. 2020), *Brendlin v. California*, 551 U.S. 249, 255 (2007). Regarding pretextual stops:

"An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. 'This is true even if a valid traffic stop is a pretext for other investigation.' " *United States v. Coney,* 456 F.3d 850, 855-56 (8th Cir. 2006) (internal citation omitted) *(quoting United States v. Linkous,* 285 F.3d 716, 719 (8th Cir. 2002)); *see Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that an officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis"); *United States v. Herrera-Gonzalez,* 474 F.3d 1105, 1109 (8th Cir. 2007) ("[T]he constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved, and the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop."); *United States v. Andrews,* 465 F.3d 346, 347 (8th Cir. 2006) (per curiam) ("[T]he fourth amendment is not violated if an objectively good reason for a traffic stop exists, whatever the actual subjective motive of the officer making the stop may have been."); *United States v. Thomas,* 93 F.3d 479, 485 (8th Cir. 1996) (finding a traffic stop for failing to wear seatbelts is valid "even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot").

*United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007).

As such, a traffic stop must be justified by "reasonable suspicion ... that criminal activity may be afoot." *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir. 2020), *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks and citation omitted). "When an officer makes a routine traffic stop, the officer is entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Sanchez*, 955 F.3d at 674, *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (quotation marks and citation omitted).  The reasonable suspicion inquiry asks "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Sanchez*, 955 F.3d at 674, *United States v. Walker*, 771 F.3d 449, 450 (8th Cir. 2014) (quotation marks and citation omitted).

"A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver." *United States v. Nassar*, 546 F.3d 569, 570 (8th Cir. 2008) (*citing United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007)); s*ee United States v. Cummins*, 920 F.2d 498,

500 (8th Cir. 1990) ("When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.") (*citing Pennsylvania v. Mimms*, 434 U.S. 106 (1977)). "If there is an 'articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered,' a traffic stop on that basis is not unreasonable under the Fourth Amendment." *United States v. Chartier,* 772 F.3d 539, 543 (8th Cir. 2014) (*quoting Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). In *Chartier*, the Eighth Circuit Court of Appeals held that an officer properly stopped a vehicle after determining the vehicle's registered owner did not have a valid license to drive despite not "affirmatively identify[ing]" the driver. *Id.* at 543.

Defendant argues the traffic stop was not justified because it was not supported by specific, articulable facts. Dkt. 86-1. In his view, nothing in the reports or affidavits filed by the officers provides information as to how they could have positively identified Defendant. *Id.,* p. 4. Defendant contends he looked significantly different from the picture used to identify him, did not identify himself at the traffic stop and carried no photo identification. Dkt. 81, p. 2, Dkt. 86, p. 2. The traffic stop is a hunch from Defendant's perspective, and cannot be the basis of reasonable suspicion, so all evidence flowing from the stop should be suppressed. Dkt. 86-1, p. 5. He further asserts the visual identification based solely on an out of date driving record photograph is both entirely subjective and not sufficiently reliable. Dkt. 81, p. 3, Dkt. 86, p. 3. He notes the law enforcement officers who identified Defendant had no previous encounters with him. Dkt. 86-1, p. 5. Further, when he identified Defendant, Sergeant Wall was travelling at highway speeds and Defendant was wearing a baseball cap. *Id.*

The government argues Defendant's rights were not violated during the traffic stop. Dkt. 89, pp. 5-13. In fact, the government emphasizes, in this case, the only issue for the court is to determine is whether the totality of the circumstances supported the traffic stop. Dkt. 89, p. 6.

Sergeant Wall had reasonable suspicion to stop the car and positively identified Defendant. Dkt. 89, pp. 5-7. The traffic stop was not based on a hunch but on specific, articulable reasons, supported by probable cause. Dkt. 89, p.7.

This Magistrate Judge concludes the traffic stop in this case was appropriate. A traffic violation, no matter how minor, provides probable cause to support a traffic stop. Here, the stop was based on a particularized and objective basis for suspecting legal wrongdoing – Defendant was driving the vehicle while his driver's license was suspended. Sergeant Bell positively identified Defendant and did so by deliberately pulling up alongside the vehicle. He knew Defendant had a suspended driver's license. Sergeant Wall reviewed Defendant's driver's license photograph through the State of Iowa. Sergeant Wall pulled up parallel to the 2010 Ford Fusion and Defendant looked right at him. He testified the vehicle did not have tinted windows and Defendant's hat did not obstruct his face.

Sergeant Wall testified he had a clear view of Defendant. Whether the driver's license photograph looked "significantly different" than Defendant did when he was stopped is a matter of degree and not a determinative factor on this issue. Police officers frequently view photographs of people to identify individuals, using their training and experience to match facial characteristics. Sergeant Wall has been an officer with the Henry County Sheriff's Office since 2017 and was previously with the City of Fairfield Police Department.

In addition, this Magistrate Judge has compared the driver's license photo of Defendant (Exhibit 1) to the booking photo of Defendant from that evening (Exhibit 2). The similarity of Defendant's appearance on the day of the traffic stop to his appearance in the driver's license photo is significant. Finally, it is notable Deputy Bell had previously identified Defendant through his investigation into the prior route of the vehicle. From his investigation, he determined the

11

previously unknown operator of the vehicle to be the Defendant. Then, prior to the traffic stop by

Sergeant Wall, Deputy Bell positively identified the driver of the vehicle at that time on October

2, 2019 to be Defendant. For all these reasons, the traffic stop was appropriate.

### B.   SEIZURE OF THE LOCKED CONTAINERS.

The "automobile exception" to the Fourth Amendment's warrant requirement established

in *Carroll v. United States*, 267 U.S. 132 (1925) applies to searches of vehicles that are supported

by probable cause to believe that the vehicle contains contraband. *United States v. Ross*, 456 U.S.

798, 808 (1982). The probable-cause determination must be based on objective facts. *Id.* The *Ross*

Court notes that *Carroll* held that "contraband goods concealed and illegally transported in an

automobile or other vehicle may be searched for without a warrant." *Id.* at 820 (*quoting Carroll*

267 U.S. at 153). The scope of a warrantless search of an automobile thus is not defined by the

nature of the container in which the contraband is secreted. *Id.* at 824. Rather, it is defined by the

object of the search and the places in which there is probable cause to believe that it may be found.

*Id.*

A dog sniff of the exterior of a vehicle does not violate the Fourth Amendment. *United

States v. Rivera*, 570 F.3d 1009, 1012 (8th Cir. 2009) (*citing Caballes*, 543 U.S. at 409–10). "[A]n

alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest

and search of a person or for the search of a vehicle." *United States v. Winters*, 600 F.3d 963, 967

(8th Cir. 2010), *see United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999); *see also United

States v. Perez*, 440 F.3d 363, 374 (6th Cir. 2006).

The defendant moving to suppress has the burden of proving a reasonable expectation of

privacy in the area searched. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994); *Rakas v.

Illinois*, 439 U.S. 128, 130-31 n. 1 (1978); *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir.

1991). We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Simmons v. United States*, 390 U.S. 377, 389 (1968); *Jones v. United States*, 362 U.S. 257, 261 (1960); *cf. Tileston v. Ullman*, 318 U.S. 44, 46 (1943). Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *Gomez*, 16 F.3d at 256. If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched, he has no standing to claim that they were searched or seized illegally. *Id.*

Defendant contends law enforcement was not justified in the seizure of the locked containers as neither danger nor risk of disappearance existed to support their seizure from the vehicle driven by Defendant. Dkt. 86-1, pp. 7-8. As the driver, Defendant had a reasonable expectation of privacy, and has standing to challenge the seizure and search of the containers found in the trunk. Dkt. 105, pp. 4-6. Finally, there exists no applicable warrant exception to justify law enforcement's seizure of the locked containers found in the vehicle. Dkt. 105, pp. 6-7. At hearing, Defendant indicated he was contesting only the second dog sniff of the locked containers and argued putting the locked containers in an evidence locker was not the appropriate way to handle them.

Regarding the locked containers, the government contends Defendant does not have standing to challenge the seizure of the containers from the vehicle. Dkt. 89., pp. 8-9. Additionally, based on the positive alert by the drug dog, probable cause existed to believe contraband was

present, which authorized a warrantless search of the vehicle. Dkt. 89, pp. 9-13.  The government contends the automobile exception justifies seizing the locked containers in the same manner it authorized a warrantless search of the vehicle in the first place. Dkt. 102, p. 5.

Concerning the question of standing, by his own words, Defendant denied ownership of the vehicle and denied possessing the locked containers. There was no evidence Defendant had a key to the locked containers, a possessory interest in the locked containers, a possessory interest in the vehicle, the ability to exclude others from the vehicle or whether he took precautions to maintain privacy within the vehicle. On the other hand, law enforcement was aware from tracking the vehicle for several days of Defendant had been in possession of the vehicle during that time. His denial of ownership of the vehicle only occurred when he was notified the vehicle was going to be searched. Examining the totality of the circumstances surrounding the search and the objective reasonableness of the expectation of privacy, it is arguable Defendant has not met his burden to show standing and that he had a reasonable expectation of privacy in the vehicle and/or locked containers.

Regardless, even if Defendant has standing, law enforcement had probable cause to seize the locked containers pending further investigation. Deputy Bell had information Defendant and Goodwin were trafficking drugs based on the GPS tracking information received about the vehicle in the days before the vehicle was stopped by officers on October 2, 2019. Defendant was driving the vehicle of a known drug trafficker. A certified drug dog, Uno, alerted to the area of the vehicle containing the locked containers. Sergeant Wall testified if the containers had not been locked, he would have searched them at the scene.

Instead, the locked containers were removed from the vehicle and transported to the Henry County Sherriff's Office and placed in the evidence shed. From there, Uno was deployed around

the containers, alerting again to the presence of contraband. A state search warrant was then obtained to open and search the locked containers. Sergeant Wall testified it is not uncommon for him to remove items from a vehicle and have Uno do an open-air sniff around those items. During this time, Defendant was in custody at the Henry County Jail for driving with a suspended license. Defendant was not released from custody from the time of his initial arrest up at the traffic stop to the time he was taken into custody upon the indictment in this case. For these reasons, the Magistrate Judge determines the warrantless seizure of the locked containers was not unreasonable merely because law enforcement removed the locked containers from the vehicle and transported them to the Henry County Sheriff's Office evidence shed, rather than immediately opening them at the scene of the traffic stop.

To the extent Defendant suggests the drug dog employed in this case was not reliable or the open-air sniff conducted was irregular, for a full report and recommendation, this Magistrate Judge addresses those matters and determines any such arguments have no merit. In this case, Sergeant Wall testified credibly to the certification of the drug dog, Uno, his ongoing training with him and the method and manner of the open-air sniffs conducted in this case. A drug dog is considered reliable when it has been "trained and certified to detect drugs and a detailed account of the dog's track record or education is unnecessary." *United States v. Olivera–Mendez*, 484 F.3d 505, 512 (8th Cir. 2007).  In addition, the facts surrounding the alerts by Uno in this case, suggest a reasonably prudent person would think a search would reveal contraband or evidence of a crime. *See Florida v. Harris*, 568 U.S. 237, 248 (2013) (the appropriate inquiry is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime").

## IV.    RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, that Defendant's Motions to Suppress Traffic Stop and Subsequent Evidence and Request for Hearing (Dkt. 81 and 86) be denied.

IT IS ORDERED, the parties have until December 30, 2020 to file written objections to the Report and Recommendation, pursuant to pursuant to 20 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(2), and L.Cr.R. 59.

**IT IS SO ORDERED.**

**DATED** this 16th day of December, 2020.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE